1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAEVON JAMELL LOVE,                    Case No.  2:22-cv-1963-DC-JDP (P)

12                  Petitioner,

13         v.                               ORDER; FINDINGS AND
                                            RECOMMENDATIONS
14   WARDEN,

15                  Respondent.

16

17

18         Petitioner Daevon Love, a state prisoner proceeding pro se, seeks a writ of habeas corpus

19   under 28 U.S.C. § 2254, raising four substantive claims: (1) ineffective assistance of trial counsel

20   for failing to obtain an independent evaluation of the gunshot residue evidence; (2) prosecutorial

21   misconduct for presenting inconsistent theories to the jury about the shooter's identity;

22   (3) prosecutorial misconduct for presenting allegedly false testimony to the jury; and

23   (4) ineffective assistance of appellate counsel for failing to raise certain claims in his direct

24   appeal.  ECF No. 1.[1]  Respondent has filed an answer, ECF No. 11.  Petitioner has filed a

25   traverse, ECF No. 19, and a motion to enforce a prior order, ECF No. 30.  After reviewing the

26   ──────────────────
       [1] Petitioner also argues that the state trial court erred in finding that his state habeas
27   petition was untimely.  ECF No. 1 at 23-26.  However, the timeliness of petitioner's habeas
     petition is undisputed, *see* ECF No. 11 at 6, and, in light of the analysis below regarding the "look
28   through" presumption, petitioner's arguments are inapplicable.

                                                 1

1  pleadings and state court records, I recommend that the petition be denied.  I will also deny

2  petitioner's motion to enforce a prior order.

3  **Federal Habeas Petition**

4  **I.  Background**

5  I have reviewed the background summary drafted by the state appellate court on

6  petitioner's direct appeal.  It is correct, and I reproduce it here:

7  FACTUAL AND PROCEDURAL BACKGROUND

8  **1. Assault on J.L. (counts one and two)**

9  In the summer of 2014, defendant's girlfriend and daughter lived in
10 the same apartment complex as J.L.  J.L. saw defendant smoking
   marijuana in the complex common area and complained to the
11 management.  Afterward, defendant demanded J.L. come outside
   and fight, but J.L. ignored him.

12 A few weeks later, on July 31, 2014, J.L. arrived home at 9:20 p.m.
   and saw defendant outside with five of his friends.  As J.L. walked
13 past, defendant asked if he was afraid.  J.L. replied no and went
   upstairs to his apartment.  Fifteen minutes later, J.L. walked back to
14 his car to get something.  As J.L. returned to his apartment,
   defendant and his friends hit J.L. on his back and head, causing J.L.
15 to fall to the ground.  Defendant and three others continued hitting
   and kicking J.L. for three minutes until J.L. pulled a closed knife
16 from his pocket and hit one of them.  Defendant ripped off J.L.'s
   shirt and used it to "confront" J.L.  Defendant eventually backed
17 away.  J.L. suffered a broken nose, a swollen eye, and pain and
   bruising to his ribs and back.
18
   On the evening of September 13, 2014, J.L. saw defendant with a
19 gun, sitting in the passenger seat of his friend's car.

20 In September 2015, defendant was charged in case No. 14F06720
   with assault on J.L. likely to cause great bodily injury (§ 245, subd.
21 (a)(1); count one) and battery on J.L. causing serious bodily injury
   (§ 243, subd. (d); count two).[2]  It was further alleged defendant
22 had a prior serious felony conviction.  (§ 667, subds. (b)-(i).)

23 On October 7, 2015, defendant was released on bail.

24 On December 31, 2015, defendant, who was again incarcerated,
   spoke with his girlfriend M.B. via telephone.  Defendant asked
25 M.B. whether she had spoken with police, and M.B. responded she
   "d[idn't] know what I'm supposed to tell him."  Defendant
26 responded, "basically just tell them the truth: [defendant] didn't do

27 ────────────────

   [2] [FN from opinion] This charge (count two) was later dismissed upon the People's
28 motion.

2

nothing to the guy. I lied—I lied to see can I get him—put, put in jail because he cheated on me and I was very angry at him and that's why I said all that." A recording of the call was played for the jury.

**2. Shooting at a vehicle (counts three through seven)**

The morning of November 8, 2015, T.R. and his wife J.F. went to the market. T.R. was not wearing his glasses. As T.R. was backing up his car to exit the parking spot, he honked to alert another car that was backing up at the same time. The other car stopped, and T.R. safely exited the parking lot. As T.R. was driving away, he saw the same car about to hit him, so he honked his horn. The car pulled behind T.R.'s car, and T.R. heard two gunshots. J.F. said, "[t]hey [are] shooting at us." T.R. looked in his rearview and side mirrors and saw a passenger with a gun leaning out of the car. J.F. ducked and screamed that a pedestrian (later identified as P.G.) had been shot. The other car drove in a different direction, and T.R. sped toward home.

When T.R. got home 10 minutes later, he called 911 and said a Black man in the back of a maroon (or burgundy) Buick with a broken front grill had shot at them. T.R. told the 911 operator the driver was Hispanic and there was a passenger in the front with long hair, while the shooter was Black, had a baseball cap, and wore his hair in a ponytail. A recording of T.R.'s 911 call was played for the jury. In a police field showup the day of the incident, T.R. and J.F. each identified Allan Davis as the driver and defendant as the shooter. J.F. and T.R. also identified defendant as the shooter at trial via the same photos the police showed them after the incident, although J.F. also testified both the driver and defendant were shooting at them. Although T.R. told police the day of the incident that he saw the shooter on the left side of the car, at trial T.R. testified he saw the shooter on the passenger side of the car. J.F. told police the day of the incident that the back left passenger was the shooter. At trial, J.F. initially testified the shooter was in the front passenger seat, but later testified she had told police the shooter was in the back seat.

During trial, the jury was shown video surveillance from the store, and T.R. testified he recognized defendant in the video; he was wearing a baseball cap and had his hair in a ponytail. J.F. testified she suffered from mental illness, including depression, and was currently on medication. She also told an employee of the district attorney's office that she suffers from schizophrenia and her medication intake had been inconsistent during the several months before trial.

At trial, P.G. testified he had been walking to work and listening to music on his headphones when he heard a loud noise. He realized he had been shot in the shoulder.

Police found a maroon four-door Buick with a broken front grill parked in front of a house a half mile away from the market. Four Black men were standing in the driveway, including Allan Davis,

who owned the suspect car, and defendant, who was wearing a ball cap and standing 10 feet away from a white SUV. Defendant was the closest of the men to the SUV. Inside defendant's pocket was a set of keys, including the key to the suspect vehicle. Police searched inside the car and found a live bullet behind the driver's seat, a bullet hole in the roof, and Davis's driver's license. Police also found a loaded 9-millimeter semiautomatic pistol behind the left front tire of the white SUV. The bullet in the chamber matched the bullet found in the back of the maroon Buick. There were no fingerprints or DNA on the gun. Defendant and Davis each tested positive for gunshot residue, indicating each fired a gun, was in the vicinity of a gun being fired, or touched something with gunshot residue. Davis had more gunshot residue particles than defendant. The prosecution's witness testified gunshot residue particles dissipate quickly, and it was possible for a shooter to not have gunshot residue on their hands. In addition, it was impossible to identify the shooter based on the test results and there was no significance to the number of particles found on someone's hands.

In March 2016, defendant was charged in case No. 15F06950 with being a felon in possession of a firearm (§ 29800, subd. (a)(1)), shooting at an occupied vehicle (§ 246), and three counts of assault with a semiautomatic firearm on J.F., T.R., and P.G. (§ 245, subd. (b)). It was also alleged defendant had a prior strike (§ 667, subds. (b)-(i)) and that, except for the section 29800 charge, he was on bail when he committed the crimes (§ 12022.1). With respect to the assault charges, it was further alleged defendant personally used a firearm. (§ 12022.5, subd. (a)(1).)

**3. Consolidation of charges, trial, and conviction**

In June 2016, the trial court granted the prosecution's motion to consolidate cases 14F06720 and 15F06950.[3] Defendant was charged with assault on J.L. likely to cause great bodily injury (§ 245, subd. (a)(1); count one), two counts of being a felon in possession of a firearm (§ 29800, subd. (a)(1); counts two (Sept. 13, 2014) and seven (Nov. 10, 2015)), shooting at an occupied vehicle (§ 246; count three), and three counts of assault with a semiautomatic firearm on J.F., T.R., and P.G. (§ 245, subd. (b); counts four, five, & six). With respect to counts four through six, it was further alleged defendant used a semiautomatic firearm. (§ 12022.5, subds. (a) & (d).) It was further alleged defendant had a prior serious felony conviction (§ 667, subds. (b)-(i)) and that, with respect to counts three through seven, defendant committed the crimes while released from custody (§ 12022.1).

In October 2016, defendant moved to separate the trials for the July 2014 and November 2015 offenses. Although the charges involved assault, defendant argued they were different because of the firearm

---

[3] [FN from opinion] The consolidated charges originally included battery on J.L. causing serious bodily injury (§ 243, subd. (d); count two), but this count was dismissed in October 2016 based on the prosecutor's motion. The trial court ordered the remaining charges renumbered. We will refer to the renumbered counts, *post*.

4

use in the shooting charges.  In addition, according to defendant, there were no issues of cross-admissibility, neither case was a strong one, and the counts related to the car shooting were inflammatory in nature, including the likelihood the jury might permit knowledge of his other crimes to "tip the scale against him."

The trial court denied defendant's motion, reasoning counts one and two had the same witness, namely J.L.  In addition, the remaining counts involved the same class of crimes (assault).  Defendant had not established prejudice, since the charges were not unusually likely to inflame the jury, especially with "proper instructions," to consider each count separately.  Also, there was no evidence that one case was weaker than the other.  Finally, defendant had not objected to the consolidation.

During the November 2016 trial, the prosecutor argued during closing argument that "[t]he victims in this case deserve justice. . . . The Defendant should not be able to run around, with immunity, victimizing these poor people.  [¶]  You have everything that you need to find him guilty of the charges."  The prosecutor also discussed defense counsel's argument that there was "no connection" between the different pieces of circumstantial evidence: "[the law] tells you to look at the totality of the evidence, to use your common sense, to look at the big picture . . . to look at all the evidence together."  The prosecutor continued, noting defense counsel had pointed out inconsistencies, but "[a]re we to believe that the Defendant is the unluckiest person to have ever walked the earth?  [J.L.]'s lying to take him down, over a parking spot?  [J.F.] and [T.R.] mistakenly identified him as the person who shot at their car?  That he just happened to be less than a mile away [from] where the shooting occurred?  It was just coincidence that he was standing feet away from where that gun was found or that he had the keys to the suspect vehicle, just a fluke that the caliber of that gun matches the caliber of the bullet in the car, that there's some innocent explanation for him having [gunshot residue] on his hands . . . ?  [¶]  That is not reasonable doubt."

The trial court gave various instructions to the jury, including that it "must follow the law as I explain it to you, even if you disagree with it.  [¶]  If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."  The trial court continued, "[e]ach of the counts charged in this case is a separate crime.  You must consider each count separately and return a separate verdict for each one."

On November 8, 2016, a jury convicted defendant of counts one (§ 245, subd. (a)(4)), and three through seven (§§ 246, 245, subd. (b), 29800, subd. (a)(1)).[4]  With respect to counts four through six, the jury also found true that defendant used a firearm. (§ 12022.5, subds. (a) & (d).)  With respect to counts three through seven, the jury also found true that defendant committed the crimes

---

[4] [FN from opinion] The jury found defendant not guilty of count two (being a felon in possession of a firearm (§ 29800, subd. (a)(1)).

1    while released on bail. (§ 12022.1.) In subsequent proceedings, the
      trial court found true defendant incurred a prior serious felony
2    conviction. (§§ 667, subds. (b)-(i).)

3    On March 3, 2017, the trial court sentenced defendant to state
      prison to serve an aggregate term of 30 years four months, as
4    follows:

5    Twelve years for count four (the midterm of 6 years, doubled due to
      the strike) (§ 245, subd. (b)) plus 4 years (the midterm) for the
6    firearm enhancement (§ 12022.5, subd. (a)), 2 years consecutive for
      count one (one third the midterm of 3 years, doubled due to the
7    strike) (§ 245, subd. (a)(4)), 4 years consecutive for count five (one
      third the midterm of 6 years, doubled due to the strike) (§ 245,
8    subd. (b)) plus 1 year 4 months for the firearm enhancement (one
      third the midterm) (§ 12022.5, subd. (a)), 6 years concurrent for
9    count six (the midterm) (§ 245, subd. (a)(4)) plus 4 years concurrent
      for the firearm enhancement (the midterm) (§ 12022.5), 4 years for
10   count seven (the midterm) (§ 29800, subd. (a)(1)) stayed pursuant
      to section 654, 10 years for count three (§ 246) (the midterm of 5
11   years, doubled due to the strike) plus 2 years for the on bail
      enhancement (§ 12022.1, subd. (b)) stayed pursuant to section 654,
12   5 years for the prior serious felony conviction (§ 667, subd. (a)),
      and 2 years for the on-bail enhancement (§ 12022.1, subd. (b)).

13

14   The trial court also imposed various fines and fees and awarded
      defendant 722 days custody credit, with 628 days actual and 94
15   days conduct credit. (§ 2933.1, subd. (c).) The custody credit was
      based on the probation report's calculation that used an end date of
16   January 27, 2017, the originally scheduled date for the sentencing
      hearing. The trial court continued the hearing to March 3, 2017 to
17   give defense counsel enough time to analyze the probation report.

     Defendant filed a timely appeal.
18

19   ECF No. 12-11 at 2-8.

20        As a result of his direct appeal, petitioner's judgment was modified to award him 762 days

21   of custody credit. *Id.* at 15. The case was also remanded to the trial court for it to consider

22   exercising its discretion under (1) California Penal Code § 12022.5(c), to strike the firearm

23   enhancements and (2) California Penal Code §§ 667 and 1385 to strike the prior serious felony

24   conviction enhancement. *Id.* Petitioner petitioned the California Supreme Court to review the

25   appellate decision, which the court denied. ECF No. 12-13.

26        On remand, the trial court declined to exercise its discretion in striking the enhancements,

27   leaving unchanged petitioner's sentence of thirty years, four months' imprisonment. ECF No. 12-

28

14 at 2.  Petitioner appealed from the trial court's decision, and the state appellate court appointed

petitioner appellate counsel.  *Id.*  Appellate counsel asked the court to review the record to

determine whether there were any arguable issues for appeal, and the state appellate court

determined no such issued existed.  *Id.* at 4-5.  As such, it dismissed the appeal.  *Id.* at 5.

Petitioner again petitioned the California Supreme Court to review the state appellate court's

dismissal of his second appeal, which the court granted pending the disposition of a case with a

related issue.  ECF No. 12-16.

Petitioner then filed two state habeas petitions, in which he raised the four issues he

currently raises in his federal habeas petition.  ECF Nos. 12-17, 12-19.  The state trial court

denied petitioner's first petition as untimely and meritless and the second petition as duplicative

and procedurally barred.  ECF Nos. 12-18, 12-20.

Petitioner then filed a state habeas petition with the California Supreme Court, raising the

same arguments presented here and also arguing that his petition was timely.  ECF No. 12-21.

The California Supreme Court denied petitioner's petitions "on the merits" with the following

citation: "(*See Harrington v. Richter* (2011) 562 U.S. 86, citing *Ylst v. Nunnemaker* (1991) 501

U.S. 797, 803.)"  ECF No. 12-22.  It did not provide any reasoning for its denial.  *See generally*

*id.*  Now pending is petitioner's federal habeas petition.

## II.    Discussion

### A.    Legal Standards

A federal court may grant habeas relief when a petitioner shows that his custody violates

federal law.  *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75

(2000).  Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition.  *See Harrington v. Richter*,

562 U.S. 86, 97 (2011).  Under AEDPA, a petitioner may obtain relief on federal habeas claims

that have been "adjudicated on the merits in state court proceedings" only if the state court's

adjudication resulted in a decision (1) "contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States" or (2)

1    "based on an unreasonable determination of the facts in light of the evidence presented in the

2    State court proceeding."  28 U.S.C. § 2254(d).

3        To decide a § 2254 petition, a federal court examines the decision of the last state court to

4    have issued a reasoned opinion on petitioner's habeas claims.  *See Wilson v. Sellers*, 584 U.S.

5    122, 125 (2018); *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) ("Because, here, neither

6    the court of appeal nor the California Supreme Court issued a reasoned opinion on the merits of

7    this claim, we look to the trial court's decision."); *McCormick v. Adams*, 621 F.3d 970, 975-76

8    (9th Cir. 2010) (reviewing the decision of the court of appeal, which was last reasoned decision of

9    a state court); *Gill v. Ayers*, 342 F.3d 911, 917 n.5 (9th Cir. 2003) ("Because the California

10   Supreme Court denied review of Gill's habeas petition without comment, we look through the

11   unexplained California Supreme Court decision to the last reasoned decision . . . as the basis for

12   the state court's judgment.") (internal quotations omitted).

13            **B.    Analysis**

14       Before reviewing the merits of petitioner's claims, the court must determine which

15   underlying state court decision it must rely on when considering the claims.  As noted above, a

16   federal court should examine the decision of the last state court to have issued a reasoned opinion

17   on petitioner's habeas claims when reviewing a § 2254 petition.  *Wilson*, 584 U.S. at 125.  This

18   method sometimes requires courts to "look through" an unreasoned opinion to a lower court's

19   reasoned opinion.  *Id.*

20       In the current case, petitioner filed two state habeas petitions in which he raised the same

21   arguments he now raises in his federal petition.  *See* ECF Nos. 12-17, 12-19.  The state trial court

22   denied petitioner's first state petition in a reasoned order.  *See* ECF No. 12-18.  It concluded that

23   petitioner's arguments were untimely, and also meritless.  *Id.* at 2-4.  To petitioner's second state

24   petition, the trial court noted that petitioner had filed it before it had ruled on his first petition, and

25   it denied the petition as procedurally barred.  ECF No. 12-20.

26       Petitioner then filed another habeas petition with the California Supreme Court.  ECF No.

27   20-21.  Petitioner presented the same arguments raised in his original petition, with additional

28

1    arguments regarding the timeliness of his petition.  *Id.* at 14-17.  The California Supreme Court

2    denied the petition "on the merits," citing *Richter* and *Ylst* without elaboration.  ECF No. 12-22.

3            In its answer, the state contends that this court should not "look through" the California

4    Supreme Court's denial to the state trial court's reasoning when analyzing petitioner's claims.

5    ECF No. 11 at 11-12.  It contends that the California Supreme Court's order indicates that it did

6    not rely on the trial court's reasoning and application of procedural bars.  *Id.* at 12.  Instead, it

7    argues, the California Supreme Court indicated that it was departing from the trial court's

8    reasoning when it stated that the denial was "on the merits" and cited to *Richter* and *Ylst*.  *Id.*  It

9    also argues that the California Supreme Court has spoken on this issue in another case, explaining

10   that when it denies habeas relief, it does not directly review the lower courts' rulings.  *Id.*  As

11   such, it contends that it has rebutted the "look through" presumption and asks this court not to

12   consider the state court's reasoned opinion.  *Id.*

13           When federal courts are given an unreasoned state appellate opinion and employ the "look

14   through" doctrine to the last reasoned state court opinion, the court should "presume that the

15   unexplained decision adopted the same reasoning" as the last state court's reasoned opinion.

16   *Wilson*, 584 U.S. at 125.  However, the state can "rebut the presumption by showing that the

17   unexplained affirmance relied or most likely did rely on different grounds than the lower state

18   court's decision, such as alternative grounds for affirmance that were briefed or argued to the

19   state supreme court or obvious in the record it reviewed."  *Id.* at 125-26.

20           Here, when looking to the California Supreme Court's denial of petitioner's petition for

21   review, the court appears to be citing the following passage from *Richter*:

22              When a federal claim has been presented to a state court and the
                state court has denied relief, it may be presumed that the state court
23              adjudicated the claim on the merits in the absence of any indication
                or state-law procedural principles to the contrary. *Cf. Harris v.*
24              *Reed*, 489 U.S. 255, 265, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)
                (presumption of a merits determination when it is unclear whether a
25              decision appearing to rest on federal grounds was decided on
                another basis).
26
                The presumption may be overcome when there is reason to think
27              some other explanation for the state court's decision is more likely.
                *See*, *e.g.*, *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590,
28              115 L.Ed.2d 706 (1991).

*Richter*, 562 U.S. at 99-100.  *Richter* cites *Ylst*:

> The problem we face arises, of course, because many formulary orders are not meant to convey anything as to the reason for the decision.  Attributing a reason is therefore both difficult and artificial.  We think that the attribution necessary for federal habeas purposes can be facilitated, and sound results more often assured, by applying the following presumption: Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.  If an earlier opinion "fairly appear[s] to rest primarily upon federal law," we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place.  Similarly where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.  This approach accords with the view of every Court of Appeals to consider the matter, save the court below.

*Ylst*, 501 U.S. at 803 (citations omitted).

Significant in this analysis is California's structure for habeas petitions.  *See Flemming v. Matteson*, 26 F.4th 1136 (9th Cir. 2022).  In *Flemming*, the Ninth Circuit explored a similar issue.  *See id.*  It highlighted that, under California law, habeas petitions filed before a higher court are considered new petitions invoking the higher court's original jurisdiction, and the petitions are not considered challenges to the lower court's denial of the previous petition.  *Id.* at 1144 (citing *Robinson v. Lewis*, 469 P.3d 414, 416 (Cal. 2020)).  As such, a reviewing court considering the new petition does not directly review the trial court's ruling, but it instead makes its own ruling.  *Id.*

The Supreme Court has warned that the California Supreme Court's use of "on the merits" does not automatically warrant a holding that the petition was timely filed.  *Evans v. Chavis*, 546 U.S. 189, 197 (2006).  Nevertheless, as noted earlier, the presumption of "looking through" can be rebutted by evidence showing that the California Supreme Court considered the petitioner's state habeas petition timely.  *Trigueros v. Adams*, 658 F.3d 983, 990 (9th Cir. 2011).  Facts that can overcome the "look through" presumption include the absence of any citation addressing timeliness.  *Id.* (holding that the "look through" presumption had been overcome by evidence that the California Supreme Court requested informal briefing on the merits, submission of briefing on the timeliness issue, and the absence of a citation regarding timeliness in the California Supreme

10

1    Court's order); *see also Jackett v. Santoro*, No. 21cv1626-L, 2023 WL 3990060, at *9 (S.D. Cal.

2    June 12, 2023) (relying on *Trigueros* and concluding the same).  Additionally, the "look through"

3    doctrine does not apply where the claims or issues are not "precisely the same."  *Valdez v.*

4    *Montgomery*, 918 F.3d 687, 691 (9th Cir. 2019).

5          Here, it appears that the state has rebutted the "look through" presumption by pointing to

6    evidence suggesting that the California Supreme Court rendered petitioner's state habeas petition

7    timely and denied the petition on the merits.  First, petitioner's state habeas petition filed with the

8    California Supreme Court is considered a newly filed petition, meaning that the California

9    Supreme Court reviewed the petition anew without reviewing the state trial court's order.  *See*

10   *Flemming*, 26 F.4th at 1144.  Additionally, petitioner added a new argument to his petition to the

11   California Supreme Court specifically addressing the timeliness of his petition, showing that the

12   issue was properly before the California Supreme Court to review, *see Trigueros*, 658 F.3d at

13   990, and that the petition did not involve "precisely the same" issues as the one filed before the

14   state court*, see Valdez*, 918 F.3d at 691.  Finally, the California Supreme Court's order denied the

15   petition "on the merits" and cited to *Richter* and *Ylst*, which address the "look through"

16   presumption.  Thus, the state has rebutted the "look through" presumption, and I will only

17   consider the California Supreme Court's denial of petitioner's claims when reviewing his federal

18   petition.

19         As a result, I must perform an "independent review of the record" to determine whether

20   the California Supreme Court's decision was objectively unreasonable.  *Himes v. Thompson*, 336

21   F.3d 848, 853 (9th Cir. 2003).  While a federal court cannot analyze exactly what the state court

22   did when it issued the summary denial, a federal court must review the state court record to

23   determine whether there was any "reasonable basis for the state court to deny relief."  *Richter*,

24   562 U.S. at 98.  The federal court "must determine what arguments or theories . . . could have

25   supported the state court's decision; and then it must ask whether it is possible fairminded jurists

26   could disagree that those arguments or theories are inconsistent with the holding in a prior

27   decision of [the Supreme] Court."  *Id.* at 101.  Under these circumstances, the petitioner still has

28   the burden of "showing there was no reasonable basis for the state court to deny relief."  *Id.* at 98.

1  **B.**  **Merits Review of Petitioner's Claims**

2     **1.**  **Ineffective Assistance of Trial Counsel**

3    Petitioner first argues that his trial counsel rendered ineffective assistance when he failed

4 to obtain an independent evaluation of the gunshot residue ("GSR") findings made by the state

5 forensic scientists. ECF No. 1 at 27. He asserts that the state's forensic scientist testified that

6 GSR was found on petitioner's hand, but that she could not testify that petitioner was the one who

7 shot the gun. *Id.* at 28-29. Then, on cross-examination, petitioner's counsel questioned the

8 scientist about the existence of untested GSR samples, and the scientist confirmed that such

9 samples existed and that she did not test them. *Id.* at 29. According to petitioner, his counsel had

10 a duty to independently test these items, and, had counsel done so, he would have been able to

11 prove he was not the shooter. *Id.* at 30-32. Petitioner raised this claim in his state habeas

12 petition, which the California Supreme Court summarily denied. ECF No. 12-22.

13    A "doubly" deferential standard governs a federal habeas petitioner's claim of ineffective

14 assistance of counsel. *See Richter*, 562 U.S. at 105. On direct appeal, the two-step inquiry from

15 *Strickland v. Washington* guides the analysis. *See* 466 U.S. 668, 687 (1984). First, a criminal

16 defendant must show some deficient performance by counsel that is "so serious that counsel was

17 not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* Second,

18 the defendant must show that the deficient performance caused him prejudice, which requires

19 "showing that counsel's errors were so serious as to deprive [the petitioner] of a fair trial." *Id.*;

20 *see also Fields v. Brown*, 503 F.3d 755, 776 (9th Cir. 2007) (noting that prejudice exists when

21 there is a reasonable probability that, but for counsel's error, the outcome of the proceedings

22 would have been different (citing *Strickland*, 466 U.S. at 694)).

23    On habeas review, coupled with § 2254(d)'s fairminded jurist standard, the *Strickland*

24 requirements become even more deferential: the question is "whether there is *any* reasonable

25 argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105

26 (emphasis added). That is, if there is even one reasonable argument that counsel did not violate

27 the *Strickland* standard—even if the state court has not identified such argument—the petitioner

28

1    cannot obtain habeas relief. *See id.* at 106. Habeas claims should not be granted "on the basis of

2    little more than speculation with slight support." *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995).

3         Petitioner's ineffective assistance of counsel claim should be denied because he has not

4    shown that "there was no reasonable basis for the [California Supreme Court] to deny relief." *See*

5    *Richter*, 562 U.S. at 98. First, petitioner's claim is speculative. *See Wood*, 516 U.S. at 8. He

6    speculates that his trial counsel did not perform additional testing, and he speculates that, had

7    additional testing been done, it would have exonerated him. However, he has produced no

8    evidence supporting his contentions. In reviewing the record, the testimony demonstrates that the

9    forensic scientist at issue testified that she could not identify petitioner as the shooter due to the

10   low about of GSR on him, and even testified that petitioner had only two characteristic GSR

11   particles on him, whereas his codefendant had six. *See* ECF No. 1 at 29-30. As such, the jury

12   was presented with GSR evidence showing that petitioner had a low amount in comparison to his

13   codefendant, and petitioner's assertion that additional testing would have changed the outcome of

14   the trial is speculative. His claim should be denied.

15              **2.      Prosecutorial Misconduct—Inconsistent Theory & False**
                          **Testimony**
16

17        Petitioner also argues that the state committed prosecutorial misconduct by presenting

18   inconsistent theories to the jury about the shooter's identity and by presenting allegedly false

19   testimony to the jury. ECF No. 1 at 33-51. First, petitioner argues that the state improperly

20   argued alternative theories on liability. *Id.* at 33. He asserts that the state entered into plea

21   negotiations with his codefendant, and that his codefendant pled guilty to violating California

22   Penal Code § 246. *Id.* Petitioner contends that the "only rational way to interpret" the plea deal

23   is that his codefendant admitted to shooting the gun, which means that the state should not have

24   argued that petitioner shot the gun. *Id.* at 33-34. He also argues that the state violated *Brady v.*

25   *Maryland*, 373 U.S. 83 (1963), by withholding from the defense information about plea

26   negotiations. *Id.* at 34. He argues that, had he known that his codefendant admitted to being the

27   shooter, he would have called his codefendant as a witness. *Id.* at 34-35.

28

                                                    13

1    Second, petitioner argues that the state knowingly presented false testimony.  *Id.* at 37.

2    He contends that one witness, J.F., suffered from a mental disorder that affected the way she

3    perceived events, and that the state knew this information but allowed her to testify.  *Id.*

4    Petitioner contends that J.F. gave testimony inconsistent with the case theory, including by

5    testifying to there being three shooters instead of one, and to seeing the shooting victim fall to the

6    ground when the victim actually ran away.  *Id.* at 38-40.  Thus, the state should have known that

7    J.F.'s testimony was untruthful and that she never witnessed the shooting at all.  *Id.* at 40-43.

8    Petitioner also argues that another witness, T.R., testified falsely because his in-court

9    testimony differed from his out-of-court statement to police.  *Id.* at 45-47.  He contends that the

10   change in testimony meant the state knew Robinson was testifying falsely, and it did not attempt

11   to correct the testimony.  *Id.* at 47-48.  Petitioner also raised these claims in his state habeas

12   petition, which the California Supreme Court summarily denied.  ECF No. 12-22.

13   Petitioner's prosecutorial misconduct claims should be denied because he has not shown

14   that "there was no reasonable basis for the [California Supreme Court] to deny relief."  *See*

15   *Richter*, 562 U.S. at 98.  When reviewing a claim of prosecutorial misconduct, federal courts can

16   only grant relief if the misconduct violates due process, not simply because the court disagrees

17   with the prosecutor's behavior.  *Towery v. Schriro*, 641 F.3d 300, 306 (9th Cir. 2010).  A claim

18   that the state failed to disclose exculpatory evidence is reviewed under standards arising out of

19   *Brady*, while claims arguing that the state put forth false evidence are reviewed under standards

20   arising out of *Napue v. Illinois*, 360, 264 (1959).  *Id.*

21   Under *Brady*, "suppression by the prosecution of evidence favorable to an accused upon

22   request violates due process where the evidence is material either to guilt or to punishment,

23   irrespective of the good faith or bad faith of the prosecution."  *Towery*, 641 F.3d at 309 (quoting

24   *Brady*, 373 U.S. at 87) (internal quotation marks omitted).  To establish such claim, a petitioner

25   must show that (1) the evidence at issue was favorable to him because it was exculpatory or

26   impeaching, (2) the evidence was willfully or inadvertently suppressed by the state, and

27   (3) petitioner suffered prejudice.  *Id.*  To establish prejudice, a petitioner must demonstrate that

28   there is a reasonable probability that the result of the proceeding would have been different had

14

1   the evidence been disclosed to the defense.  *Hamilton v. Ayers*, 583 F.3d 1100, 1110 (9th Cir.

2   2009).  The suppression is viewed in light of the evidence as a whole, meaning that evidence of

3   overwhelming guilt could render the suppressed evidence relatively insignificant.  *Id.*  To

4   determine whether evidence was suppressed, courts must ask whether the petitioner had enough

5   information to find the supposed *Brady* material on his own.  *Milke v. Ryan*, 711 F.3d 998, 1017

6   (9th Cir. 2013).  "If so, there's no *Brady* violation."  *Id.*

7        Under *Napue*, "[t]he knowing use of false evidence by the state, or the failure to correct

8   false evidence, may violate due process."  *Id.* at 308.  To establish such claim, a petitioner must

9   show that (1) the testimony was actually false, (2) the state knew or should have known the

10  testimony was actually false, and (3) the false testimony was material.  *United States v. Zuno-*

11  *Arce*, 339 F.3d 886, 889 (9th Cir. 2003) ("*Zuno-Arce II*").  The presentation of conflicting

12  versions of events does not establish that the state knowingly used false testimony.  *See United*

13  *States v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995) ("*Zuno-Arce I*") (holding that the mere

14  existence of conflicting testimony "does not conclusively prove that the prosecutor knew that the . 

15  . . testimony was false").  The mere inference that the state knowingly used of false testimony is

16  insufficient to support a prosecutorial misconduct claim.  *Id.*; *see also De-Luis-Conti v. Evans*,

17  No. 05-2245 SBA, 2008 WL 3166958, at *17 (N.D. Cal. 2008) ("Prosecutors will not be held

18  accountable for discrepancies in testimony where there is no evidence from which to infer

19  prosecutorial misconduct and the fairness of the trial was not materially affected.").  A *Napue*

20  violation is material when there is any reasonable likelihood that the false testimony could have

21  affected the jury's judgment.  *Clements v. Madden*, 112 F.4th 792, 800 (9th Cir. 2024).

22       This same standard applies when prosecutors pursue "fundamentally inconsistent theories

23  in separate trials against separate defendants charged with the same [crime]" using knowingly

24  false evidence or by acting in bad faith.  *Nguyen v. Lindsey*, 232 F.3d 1236, 1240 (9th Cir. 2000).

25  Nevertheless, "there is no clearly established Supreme Court precedent prohibiting a prosecutor

26  from presenting inconsistent theories to convict codefendants in separate trials."  *Waidla v. Davis*,

27  126 F.4th 621, 646 (9th Cir. 2024).

28

1    As noted, the AEDPA establishes a highly deferential standard for evaluating state court

2    decisions. *Moses v. Payne*, 555 F.3d 742, 751 (9th Cir. 2009). A state court decision is contrary

3    to federal law if the state court applies a rule that contradicts Supreme Court precedent or if the

4    state court confronts an identical set of facts from those in a Supreme Court decision and

5    nevertheless arrives at a different result than the Supreme Court. *Id.* A state court decision is an

6    unreasonable application of federal law if the state court identifies the correct governing Supreme

7    Court principle but unreasonably applies that principle to the petitioner's set of facts. *Id.* For a

8    decision to be an unreasonable application of federal law, the state court's decision must be more

9    than just "incorrect or erroneous"; it must be objectively unreasonable. *Id.*

10    Supreme Court precedent is not clearly established for the purposes of habeas review if a

11    court has to modify a principle to apply it to a case. *Id.* at 752. As such, where no case gives a

12    clear answer to the question presented, it cannot be said that the state court unreasonably applied

13    clearly established federal law. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008). Where a

14    Supreme Court decision does not squarely address the issue at hand or establish a legal principle

15    that clearly extends to a new context, it cannot be said that there is clearly established Supreme

16    Court precedent, and the court "must defer to the state court's decision." *Moses*, 555 F.3d at 754.

17    Petitioner's prosecutorial misconduct claims should be denied because petitioner cannot

18    demonstrate that "there was no reasonable basis for the [California Supreme Court] to deny

19    relief." *See Richter*, 562 U.S. at 98. To petitioner's *Brady* based claim, petitioner cannot

20    demonstrate that the plea deal between his codefendant and the state was suppressed for *Brady*

21    purposes. Petitioner knew he had a codefendant in this case and that the state's theory was that

22    there was only one shooter. Thus, petitioner had enough information to find the supposed *Brady*

23    material—his codefendant's plea deal—on his own at the time it occurred. *See Milke*, 711 F.3d at

24    1017. Additionally, petitioner's claim is speculative. *See Wood*, 516 U.S. at 8. He speculates

25    that his codefendant's plea deal meant that he fully admitted to being the shooter, but petitioner

26    offers no factual support for this. As such, his contention that had he known about the plea deal

27    he would have called his codefendant to testify on his behalf and take the blame for being the

28    shooter is insufficient to establish that there was a reasonable probability that the result of the

1   proceeding would have been different had the evidence been disclosed to the defense. *See*

2   *Hamilton*, 583 F.3d at 1110.

3        As for petitioner's *Napue*-based claims, petitioner speculates that the state used false

4   evidence because J.F. and T.R. presented conflicting testimony, but this does not establish a

5   *Napue* violation. *Zuno-Arce I*, 44 F.3d at 1423. Additionally, even if the testimony were false,

6   these inconsistencies were highlighted to the jury during their direct and cross-examinations,

7   meaning the jury was able to consider J.F. and T.R.'s inconsistent stories and consider for

8   themselves whether to believe their prior testimony or their in-court testimony. In all, looking to

9   the record as a whole, petitioner cannot demonstrate that there was no reasonable basis for the

10   California Supreme Court to deny him relief.

11        The same is true for petitioner's claim that the state committed prosecutorial misconduct

12   based on the state presenting inconsistent theories. Petitioner makes no showing that the state

13   knowingly used false evidence or acted in bad faith. *See Nguyen*, 232 F.3d at 1240. Even more,

14   the Supreme Court has never ruled that the state cannot present inconsistent theories of the case to

15   a jury, *see Waidla*, 126 F.4th at 646, meaning the California Supreme Court, in denying

16   petitioner's claim, cannot have unreasonably applied clearly established federal law, *see Wright*,

17   552 U.S. at 126. Accordingly, petitioner's prosecutorial misconduct claims should be denied.

            **3.**      **Ineffective Assistance of Appellate Counsel**

18

19        Finally, petitioner argues that his appellate counsel rendered ineffective assistance when

20   he failed to argue on appeal that the state committed prosecutorial misconduct in presenting the

21   allegedly false testimony from J.F. and T.R. ECF No. 1 at 52. Petitioner also raised this claim

22   his state habeas petition, which the California Supreme Court summarily denied. ECF No. 12-22.

23        Petitioner's ineffective assistance of appellate counsel claim should be denied. As an

24   initial matter, the claim is conclusory, as petitioner does not allege a specific set of facts

25   demonstrating that he is entitled to relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)

26   ("Conclusory allegations which are not supported by a statement of specific facts do not warrant

27   habeas relief."). Additionally, petitioner cannot demonstrate that "there was no reasonable basis

28   for the [California Supreme Court] to deny relief." *See Richter*, 562 U.S. at 98. As explained

1    above, petitioner's prosecutorial misconduct claims are meritless, meaning he cannot demonstrate

2    that he suffered prejudice from his counsel's failure to raise these meritless claims on appeal.  *See*

3    *Fields*, 503 F.3d at 776.  Petitioner's claim should be denied

4                              **Motion to Enforce a Prior Order**

5            Petitioner also moves to enforce a prior order, in which I amended a subpoena to require

6    that responsive documents be produced to a new address.  *See* ECF No. 27 (prior order); *see also*

7    ECF No. 30 (petitioner's motion).  Petitioner asserts that, under the prior order, his former

8    counsel was required to produce responsive documents by December 13, 2024, but he had not

9    received any response.  ECF No. 30 at 2.  He asks the court to assist him in obtaining these

10   documents.  *Id.*

11           In my prior order, I amended a subpoena that petitioner wanted to serve on his former

12   counsel to include petitioner's address.  ECF No. 27.  In the order, I directed the U.S. Marshal to

13   personally serve the subpoena and a copy of the order on petitioner's former counsel at an address

14   provided by petitioner.  *Id.* at 2.  The U.S. Marshal attempted service, but the subpoena was

15   undeliverable, since petitioner's former attorney no longer has an office at the location petitioner

16   provided.  *See* ECF No. 29.  At this point, the prior order has been complied with, as the U.S.

17   Marshal attempted service by the relevant deadline.  Petitioner did not provide an updated address

18   for his former counsel, and I cannot enforce my prior order on petitioner's former counsel when

19   he has not received the subpoena.  I deny petitioner's motion.

20           Accordingly, it is hereby ORDERED that petitioner's motion to enforce a prior order,

21   ECF No. 30, is DENIED.

22           Further, it is RECOMMENDED that:

23           1.  The petition, ECF No. 1, be DENIED;

24           2.  The court decline to issue the certificate of appealability referenced in 28 U.S.C.

25   § 2253; and

26           3.  The Clerk of Court be directed to close this case and to enter judgment accordingly.

27           These findings and recommendations are submitted to the United States District Judge

28   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days of

service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    May 22, 2025

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE